OPINION.
{¶ 1} The appellant, Justin Huard, appeals the April 15, 2003 judgment of the Common Pleas Court of Defiance County, Ohio, sentencing him to a term of imprisonment of fourteen years.
 {¶ 2} On March 7, 2003, Huard was indicted by the grand jury on five counts. Count One alleged that Huard committed aggravated robbery in violation of R.C. 2911.01(A)(1), a first degree felony. In addition, this count included a firearm specification. The second count alleged that Huard committed grand theft of a motor vehicle in violation of R.C.2913.02(A)(1), a felony of the fourth degree. Count Three then alleged that Huard committed grand theft in violation of R.C. 2913.02(A)(1), also a fourth degree felony. Each of these three offenses was alleged to have occurred on or about May 1, 2002, during a robbery of a bank. In addition, the fourth count alleged that Huard committed aggravated robbery in violation of R.C. 2911.01(A)(1) on or about August 1, 2002. This count included a second firearm specification. The fifth and final count of the indictment alleged that Huard also committed theft on or about August 1, 2002, in violation of R.C. 2913.02(A)(1), a fifth degree felony.
 {¶ 3} Initially, Huard entered pleas of not guilty as to each count of the indictment. However, on April 8, 2003, Huard changed his pleas on Count One and its specification and Count Four to guilty in exchange for the State's dismissal of the remaining counts and specification and its recommendation of six years as to the first count, three years for the specification, and five years for the fourth count, all to be served consecutive to one another for a total of fourteen years. Two days later the trial court sentenced Huard in accordance with the State's recommendation for an aggregate sentence of fourteen years. This appeal followed, and Huard now asserts two assignments of error.
The trial court did not substantially comply with Crim. R. 11 inaccepting appellant's guilty plea when appellant did not understand thenature of the firearm charge against him.
 Appellant was denied his Sixth Amendment right to the effectiveassistance of counsel when his counsel represented bothappellant/defendant and his co-defendant (in an unrelated case).
 First Assignment of Error {¶ 4} In his first assignment of error, Huard contends that the trial court erred in accepting his guilty pleas because the court failed to ensure that he understood the nature of the firearm specification. Basically, Huard maintains that he used a broken BB gun during the bank robbery on May 1, 2002, and that the trial court failed to inform him of what constituted a firearm as that term is defined in the Revised Code, which does not include a BB gun. Thus, he asserts that his plea was not entered into knowingly and intelligently.
 {¶ 5} Criminal Rule 11 imposes certain requirements on a trial court before it may accept a plea of guilty to a felony offense from a defendant. Included in this list of requirements is that the trial court must determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved[.]" Crim.R. 11(C)(2)(a). The Ohio Supreme Court has expounded upon the nature of the determination that the trial court must make, in accepting a guilty plea, as follows:
The question before the court is whether the defendant received anotice of the charges leveled against him and, if so, did he understandthe nature of those charges. As to the latter requirement, there is noeasy or exact way to make such a determination, i.e., to determine whatsomeone subjectively understands. If the defendant receives the properinformation, then we can ordinarily assume that he understands thatinformation. In this case, we must decide whether the defendant'scounsel, or someone else, provided defendant with information or noticeof the charges. To do so, we look at all the particular facts andcircumstances surrounding the case.
State v. Carter (1979), 60 Ohio St.2d 34, 38, citing Johnson v. Zerbst
(1938), 304 U.S. 458, 464.
 {¶ 6} During the plea hearing, the prosecutor informed the court that the State had negotiated a plea with Huard, who was represented by counsel, whereby Huard would plead guilty to both counts of aggravated robbery and one of the firearm specifications in exchange for the dismissal of the three remaining felony counts and the other firearm specification. The trial court then inquired of counsel for Huard as to whether this was his understanding of the plea negotiations. Upon receiving an answer in the affirmative, the following discussion occurred between the court and Huard:
THE COURT: Mr. Huard, you understand what Mr. Goldenetz is saying onyour behalf there?
 THE DEFENDANT: Yes sir.
 THE COURT: Is that what you want to do?
 THE DEFENDANT: Yes.
 THE COURT: Are you satisfied with Mr. Goldenetz's legal services inthis matter?
 THE DEFENDANT: Yes.
 THE COURT: Do you understand what the charges of Aggravated Robbery ascharged in each Counts 1 and 4 here are about and what the State wouldhave to prove to convict you of those?
 THE DEFENDANT: Yes.
 THE COURT: And the Gun Specification to Count 1, what the State wouldhave to prove to convict you of that?
 THE DEFENDANT: Yes sir.
 {¶ 7} The court then proceeded to explain the possible penalties for these offenses, including the fact that a conviction for a firearm specification required a three year prison term that had to be served consecutively to any other prison sentence imposed for these offenses. The court also provided additional information relating to sentencing, the prosecution's burden of proof, and the rights that Huard was waiving by pleading guilty and further reiterated that the firearm specification involved a mandatory three year term of imprisonment above and beyond the remainder of the sentence. After each revelation, Huard indicated that he understood. He also acknowledged that the pleas were in his best interest, given of his own free will, and not the product of any chemical influence. In addition, the trial court afforded Huard with an opportunity to ask the court questions, but Huard's only question involved speaking with his wife so that he could put his personal affairs in order prior to going to prison.
 {¶ 8} After the court's colloquy, the State provided a recitation of the facts it intended to prove, if the matter had proceeded to trial, as follows:
More specifically, as to that offense, on or about the date stated inthe Village of Ney in the [sic] Defiance County, Ohio, this Defendant anda Co-defendant entered The State Bank, Ney Branch, after a thirdCo-defendant had dropped them off near the bank location from a vehicle.The Defendant and Co-defendant entered the bank and displayed a handgun,ordered the bank tellers to the floor. After gaining control, uh, theymoved the tellers to the vault area where the Defendant and Co-defendantremoved approximately $38,000 in cash. The Defendant and Co-defendantthen took the keys from one of the tellers and fled in, the scene inthe, uh, teller's vehicle and met with the third Co-defendant, uh, afterfleeing the area and then the three fled together. Uh, both thisDefendant and the Co-defendant gave admissions to that factual scenario.
(Emphasis added.) The court then asked counsel for Huard whether he was provided discovery in this case, to which he stated that he had. Counsel then stated that the operative facts appeared to be substantially as recited by the State. Likewise, Huard answered in the affirmative when asked by the court whether he understood what the prosecutor had stated as it pertained to both counts and the firearm specification to which he was pleading guilty. Furthermore, the court asked Huard, "You heard Mr. Strausbaugh, the Prosecutor's, statement about what they say happened, is that substantially true?" Huard's response to this question was, "Yes sir." The court then accepted Huard's pleas of guilty.
 {¶ 9} At no point during the plea hearing did Huard mention the use of a broken BB gun rather than a handgun nor did he otherwise provide any information indicating that the prosecutor's recitation of the facts was inaccurate in any way. Moreover, Huard did not inform the trial court that he used a BB gun during the bank robbery until the sentencing hearing and only provided that information in an effort to convince the court that he did not intend to hurt any of the victims he robbed. Thus, at the time the court accepted the plea, Huard admitted to having used ahandgun in the bank robbery and that he understood the firearm specification was based on his use of a handgun during the commission of the offense. As such, the trial court did not err in accepting Huard's plea of guilty to the firearm specification, especially in light of the fact that Huard was informed as to the nature of all the charges to which he pled and still elected to plead guilty to the specification. Therefore, the first assignment of error is overruled.
 Second Assignment of Error {¶ 10} Huard asserts in his second assignment of error that his counsel was ineffective. The State of Ohio has adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. See State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Statev. Jones (Sept. 27, 2000), 3rd Dist. No. 02-2000-07, 2000 WL 14202 71, at *2, quoting Strickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. Further, we are also guided by the presumption that attorneys licensed by the State of Ohio "provide competent representation." Jones, supra, citing Statev. Hoffman (1998), 129 Ohio App.3d 403, 407. The second prong then requires a probability sufficient to undermine the confidence in the outcome of the proceedings. Id.
 {¶ 11} In the case sub judice, Huard maintains that trial counsel was ineffective because of a conflict of interests. Specifically, Huard contends that his trial counsel represented a co-defendant of his in another county while counsel was representing him in the present case and that counsel did not discuss various "avenues of defense" with him. However, Huard provides no information to identify this co-defendant, the type of case in which his trial counsel was representing this co-defendant, or how this affected counsel's representation of him in the present proceeding. Rather, Huard makes bold assertions that are wholly unsupported by the record.
 {¶ 12} Furthermore, Huard fails to demonstrate how counsel's performance fell below an objective standard of reasonableness and how any error by counsel prejudiced him. To the contrary, counsel was able to negotiate a plea agreement whereby three counts of the five-count indictment and a firearm specification were dismissed. In addition, this negotiated plea also included a recommendation from the State, which the trial court followed, that Huard be sentenced to fourteen years of imprisonment when he was originally facing a possible sentence of thirty years. In short, counsel was able to obtain a sentence for his client of less than half of what could have been imposed if Huard were convicted of all five counts and two specifications. Based on all of the foregoing, we cannot find that trial counsel was ineffective, and the second assignment of error is overruled.
 {¶ 13} For these reasons, the judgment of the Common Pleas Court of Defiance County, Ohio, is affirmed.
Judgment affirmed.
BRYANT, P.J., and CUPP, J., concur.